Bissell, J.,
delivered the opinion of the court.
In whatever aspect this case is viewed, it seems to have been settled by the verdict of the jury. It appeal’s that in July, 1889, The Gypsum Company was a corporation holding title to some gypsum quarries. Clemons and Graves, Bennett and Bailey owned all the stock. The stock consisted of ten thousand shares of the par value of $10, and of this, seven thousand had been issued to these parties who held it, and three thousand remained in the treasury of the company. In July, 1889, Ferguson was about to make a trip to Chicago and had negotiations with some of the parties with reference to the sale of a part of the stock at a specified price. The agreement was put in writing, and Ferguson was duly authorized to sell fifteen hundred shares of the stock for a stock consideration. This arrangement is only referred to to enable this case to be understood, since it is conceded that no action was taken under it. What was done by Ferguson subsequently was under another arrangement of August 17th of that year. According to the later agreement, the parties offered to sell three fourths of seven thousand shares of the stock for $6,000, and give Ferguson $1,500, for making the sale. The disposition of three fourths of the seven thousand shares carried with it an equal interest in the unissued stock still in the treasury of the company.
For the purposes of the decision this contract will be treated as one entered into on behalf of all the defendants in the suit, and one which bound them all in case its due per *221 forxnance was established. It is quite possible that under some circumstances there would be grave doubt as to the right of the plaintiffs to make all the parties defendants. The appellants cannot assign it for error for it is a matter not saved by the record.
Having disposed of this preliminary question, there is in reality but one inquiry which needs to be considered; did Ferguson as a broker procure a purchaser, ready, able and willing to buy the stock at the price named and on the terms suggested. The jury answered this question in the affirmative. Unless in reaching their conclusion they did it without evidence warranting the result, or in the proceedings there occurred a violation of some well known principle of law, their verdict must be upheld. It is a well established rule that this court will not interfere with the finding of a jury on any question of fact where it is rendered on conflicting testimony.
The duty of a broker is always performed when he finds a purchaser who is willing to take the property on the terms named, and is able to carry out the contract. It seems to be tolerably well settled by the proofs, as well as by the verdict, that Ferguson found such a purchaser in the person of one Dr. Abel. This purchaser was found, and the negotiations with him were completed before any sale had been made by the defendants, and before the expiration of the time limited for Ferguson’s performance. It is conceded that according to the terms of the original agreement the trade should have been made prior to September 1st. It is equally true that it was not completed on that date. Ferguson is not barred recovery by this circumstance, since on the 27th of August there was expressly granted to him such time as he might require for the purpose of completing the trade. On the 10th of September a memorandum of an agreement was drafted between Abel and Ferguson with reference to the sale. This is not stated in terms, nor js' its substance recited, since the sole-inquiry is, did Fergusozz find a purchaser able and willing. Undoubtedly Ferguson was without au *222 thority to make a written contract with any contemplated purchaser. What he drafted corresponded in all of its essential features with the evident intention, and expressed plans of the vendors, and amounted to an agreement to sell the six thousand shares at the price specified. Neither the mode of payment, nor the time when it should be made was'fixed by the original contract between Ferguson and the selling stockholders, nor were either mentioned in that of August 17th. The parties simply described the property as to its acreage, its character and capabilities, and the title which they held. By the written memorandum signed by Abel and Ferguson, certain of the price was to be paid at the inception of the enterprise, and the balance after an inspection of the property and an examination of the title and charter of the company. So long as the original delegation of authoritj- to Ferguson was silent on these points, the law would assume they were all in the contemplation of the parties, and that the payment should not be made prior to the time of the investigation as to all these matters. . Whatever was contained in the contract concerning them then may be fairly said to be within the purview of the intention of the sellers. If this is conceded, Ferguson had a right to deal on the basis of sufficient time to determine the truth as to these essentials. But as before stated, the agreement is of no consequence except that it may be looked to on the inquiry whether Ferguson found a purchaser willing to take the property. This fact, however, was otherwise sufficiently and abundantly established by the testimony of Ferguson and Dr. Abel. In the light of it the jury answered this question in favor of the plaintiff, thus entitling him to recover if he had a sufficient contract with the parties. This matter was likewise left to the jury to determine, and upon it their conclusions were with the plaintiff.
There is a good deal of argument in the briefs as to the time when Ferguson sold to Abel, and whether the defendants had not previously bargained the property away as they lawfully might, and thus deprived him of all right to sell. *223 It is not clear as to the exact date on which information was brought home to the defendants that Ferguson had made the trade. Nor is it clearly established when the deal was made with Posey by which the defendants put it out of their power to carry out the contract with Ferguson’s purchaser. Both these dates were within their exact knowledge. They withheld their information, and leave the proof as to them to the presumptions concerning the regularity and certainty of mail and telegraphic communication. They cannot complain if any doubt is resolved against them. Having knowledge they were bound to disclose it. It is tolerably certain, however, that by a letter of the 22d of September Graves and Clemons were informed that Ferguson had completed his deal, and that the parties were shortly coming to Colorado . to inspect the property. At the time of the receipt of this letter the property had not been sold to Posey, nor did the parties claim that the property was sold prior to their telegram of September 27th following. In other words it is very certain from the testimony that Graves and Clemons were so far advised of the situation of Ferguson’s trade that they had no right to make the sale on their own account unless they did it subject to a liability to Ferguson for the amount of his commissions. It is needless to state the history of the transaction with Posey, or to attempt to decide just when that trade was completed. It is enough that no binding contract had been concluded between the defendants and Posey before they were informed that Ferguson had found a purchaser, that all the needful funds had been subscribed, and the only delay was what was reasonably incident to the coming of the parties to Colorado. It is idle to urge that the vendors were not bound to await the inspection. They had both contemplated and invited it. When they were told that the negotiations between Ferguson and his vendees were substantially concluded, the vendors could not, in the face of this information proceed to negotiate a sale to others.
In the light* of the conclusions reached by the court it is wholly unnecessary to discusss the legal effect of the Posey *224 transaction. In fact, the three fourths were never sold to him. He only bought a part of that interest. The vendors still retained a very considerable share in the property, and were to participate in any profits which might accrue from its development. This certainly would deprive them of the right to set up the sale to defeat the plaintiff’s recovery pro tanto. It is only referred to as exhibiting the technical and inequitable nature of the defense. Being advised that Ferguson had completed his deal before they made any sale, they could proceed no further save at their peril. The only difference between counsel and the court is, as to the application of this doctrine. The right of the principal to sell his own property at any time prior to any sale to be made by an agent where no exclusive authority is given to the broker, and no time is fixed within which he shall have the absolute right to operate, is tolerably well settled by the authorities. The same cases however hold, that wherever the broker is authorized to sell and he finds a purchaser before any sale is completed by the principal, the latter must account for the promised commissions unless there be something in the contract which relieves him from liability. Wray v. Carpenter, 16 Colo. 271,
The question of fact respecting this matter was fairly submitted to the jury under proper instructions. In legal effect the verdict was that Ferguson found a purchaser on the terms nominated prior to the time that any sale was completed by the principals. If this fact be once conceded, the plaintiffs’ right to recover cannot be disputed, so long as there is no question concerning the amount of the commissions. Brand v. Merritt, 15 Colo. 286.
The case was fairly tried, the verdict of the jury is conclusive, and the record presents no errors on which the case should be reversed, and it will therefore be affirmed.